**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DAVID RYAN,

        Plaintiff,

  - v -               Civ. No. 9:14-CV-545
                        (MAD/DJS)
HAROLD D. GRAHAM,

         Defendants.

**APPEARANCES:**          **OF COUNSEL:**

DAVID RYAN
Plaintiff, *Pro Se*
SR1 Bldg. 2, 2nd Fl.
South Beach Psychiatric Center
777 Seaview Avenue
Staten Island, New York 10305

HON. ERIC T. SCHNEIDERMAN      MELISSA A. LATINO, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

  *Pro se* Plaintiff David Ryan commenced this action for violations of his religious rights pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. Dkt. No. 1, Compl. Following initial review, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, Plaintiff's sole remaining claims are against Defendants Harold Graham and Cheryl Morris for enforcing a Department of Corrections and Community Supervision ("DOCCS") policy limiting the number of books an inmate in the Special Housing Unit ("SHU")

may have in his cell. Dkt. No. 6, Dec. & Order, dated Aug. 29, 2014. Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 32, Mot. for Summ. J. Despite being granted multiple extensions of the deadline to respond to Defendants' Motion, Plaintiff has not filed a response. Dkt. Nos. 35, 38, 42, & 43. For the reasons that follow, it is recommended that Defendants' Motion for Summary Judgment be **granted**.

## I. BACKGROUND

### A. Plaintiff's Failure to Respond

Defendants filed their Motion for Summary Judgment on September 11, 2015, setting Plaintiff's response deadline for September 28, 2015. Mot. for Summ. J. As required by the Local Rules, Defendants advised Plaintiff of the consequences of failing to respond to the Summary Judgment Motion. *See* Dkt. No. 32. Plaintiff received several extensions of his response deadline, with a final extension until February 29, 2016, but failed to file a response. Dkt. Nos. 35, 38, 42, & 43.

Pursuant to this District's Local Rules, "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(a)(3). Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d

Cir. 2001). Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts. The Court will cite to the facts as set forth in Defendants' Rule 7.1 Statement of Facts only when properly supported by the record. Dkt. No. 32-5, Defs.' Rule 7.1. Statement of Material Facts ("Defs.' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

### B. Material Facts

Plaintiff was formerly an inmate in the custody of DOCCS. Defs.' SMF at ¶¶ 1 & 3.[1] Plaintiff is a Muslim. *Id.* at ¶ 4. Plaintiff began practicing Islam at Sing Sing Correctional Facility in 1990 and learned the faith from the facility's Imam. Dkt. No. 32-3, Melissa Latino Decl., dated Sept. 10, 2015, Ex. 1, Dep. of David Ryan, dated Apr. 17, 2015 ("Pl.'s Dep."), at 19-20.

In March 2013, Plaintiff was transferred to Auburn Correctional Facility ("Auburn C.F.") and was placed in SHU. Defs.' SMF at ¶ 9. Plaintiff requested to have "a number of religious books from his personal property" in his cell, but was denied. Compl. at ¶ 3. Plaintiff had approximately seventy religious books. Pl.'s Dep. at pp. 108-09.

DOCCS Directive No. 4933 limits the types and quantity of property an inmate may possess while in SHU. Dkt. No. 32-4, Cheryl Morris Decl., dated Sept. 9, 2015, Ex. B ("Directive No.

---

[1] Plaintiff was released from the DOCCS custody on November 13, 2015, after serving his maximum sentence. *See* DOCCS Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.ny.gov (Inmate David Ryan, DIN 10-A-0490) (last visited July 5, 2016).

4933"). In relevant part, within seventy-two hours of admission, an inmate may possess one religious book and up to five other books, magazines, and newspapers. *Id.* at p. 6. After completing thirty consecutive days in SHU free from disciplinary sanctions, an inmate may obtain an additional five books. *Id.* at p. 8. Thus, an inmate in SHU may possess, at any one time, one religious book, and up to ten other books, which may also be religious books. Morris Decl. at ¶ 13; Dkt. No. 32-2, Harold D. Graham Decl., dated Aug. 27, 2015, at ¶ 17. An inmate may also possess up to fifteen legal books. Directive No. 4933 at p. 6. And, an inmate may exchange his ten books for a different ten books every thirty days. Graham Decl. at ¶ 26.

Plaintiff admits that Defendants allowed him to have up to eleven religious books, including the Quran, in his cell and that he was able to periodically exchange them. Pl.'s Dep. at pp. 39, 90, 101-02, & 108-09. Plaintiff asserts that he needed access to all of his religious books in order to practice the required tenants of his faith. Compl. at ¶ 3; *see also* Pl.'s Dep. at pp. 27, 64, & 108-10. Plaintiff claims that his religious books teach him about his character and rights and obligations to others. Pl.'s Dep. at p. 27. He also uses the books to remember his prayers. *Id.* at pp. 26-27 & 74. Plaintiff stated that his ability to exchange his books monthly was insufficient because he needed to have the books available for "immediate reference." *Id.* at pp. 108-09.

On or about April 17, 2013, Plaintiff filed a complaint that he had been denied access to his religious books. Defs.' SMF at ¶ 62. Plaintiff was advised that his complaint was denied on May 2, 2013. *Id.* at ¶ 65; Graham Decl., Ex. B. In a letter dated October 4, 2103, Defendant Graham, the Superintendent of Auburn C.F., directed Plaintiff as follows regarding Directive No. 4933:

> 4933 is clear. Within 72 hours of admission you get one religious book (you chose a Koran) and up to 5 books, magazines and or newspapers. This was provided to you.

> After thirty days post adjustment you may receive up to 5 more books, magazines and or newspapers. Again this was given to you.
>
> If you decided to have all 10 of your books, from your property to be religious educational material that's on you. You are not authorized to have anymore than 10 books, magazines and or newspapers in your cell in SHU at anyone time.
>
> Currently our policy allows an inmate to exchange up to 5 books, magazines and or newspapers from his property once a month. This will take place on Oct. 12th.
>
> This has nothing to do with you[r] religion. You have a Koran in your cell. You may practice your religion 24/7 using the Koran. This has to do with following the rules and regulations set forth by Directive 4933 Special Housing which you fall under.

Graham Decl., Ex. D.[2]

In or around September 2013, Defendant Morris, the Director of DOCCS' Division of Ministerial, Family and Volunteer Services ("Ministerial Services"), received a complaint from Plaintiff, claiming that he had been deprived of his religious books. Defs.' SMF at ¶¶ 75 & 89. In the letter, Plaintiff stated that he had "educational books" to learn about his religion and that he was seeking to have his books that were in storage allowed in his cell. Morris Decl., Ex. C. Plaintiff also stated that he needed the books because he was taking a correspondence course to obtain a theology certificate. *Id.* Plaintiff did not claim that he did not have access to the Quran or other religious materials. Defs.' SMF at ¶¶ 91-92. On September 20, 2013, after learning that Plaintiff had also filed two grievances regarding the matter, Morris responded to Plaintiff as follows:

> Please be advised that Department policy regarding allowable in-cell property for inmates assigned to the SHU is outlined in Directive # 4933, "Special Housing Units." Please refer to that Directive for clarity.
>
> Additionally, the facility reported that you filed two grievances regarding these

---

[2] The Court notes that in this letter, Defendant Graham stated that facility policy authorized an inmate to exchange up to five books at a time, whereas in his Declaration, he stated that an inmate could exchange up to ten books at a time. *Compare* Graham Decl. at ¶ 26 *with* Graham Decl., Ex. D. Directive No. 4933 does not specify how many books an inmate may exchange at a time or how often. *See* Directive No. 4933.

> issues: # AUB-62883-13 and # AUB-62939-13, which you appealed to the Central
> Office Review Committee (CORC). Please be patient as you allow the grievance
> process to work for you.

Morris Decl., Ex. D.

Plaintiff commenced this action on May 9, 2014, asserting that Directive No. 4933 is unconstitutional insofar as it restricts the number of religious books an inmate housed in SHU may possess. *See* Compl. Plaintiff further asserts that Directive No. 4933 conflicts with Directive No. 4202.[3] Plaintiff requests monetary damages, as well as declaratory and injunctive relief.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations

---

[3] Directive No. 4202 provides that Ministerial Services "is responsible for ensuring that all religious programs and practices are carried out in accordance with the established tenets and practices of the faiths, the United States Constitution, as well as the policies and procedures of DOCCS." Morris Decl., Ex. A.

of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion.").

"If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

## III. DISCUSSION

Defendants seek summary judgment on the following grounds: (1) Plaintiff's claims for declaratory and injunctive relief are moot because Plaintiff no longer resides at Auburn C.F.; (2) to the extent Plaintiff seeks monetary damages, claims for damages are not authorized under RLUIPA; (3) it is uncontested that Defendants did not deprive Plaintiff of his religious rights; (4) Defendants are entitled to qualified immunity; and (5) insofar as Plaintiff admits that he did not administratively exhaust his administrative remedies on certain claims, those claims are subject to dismissal. Dkt. No. 32-6, Defs.' Mem. of Law.

### A. Mootness

The Court first addresses Defendants' arguments that Plaintiff's claims for declaratory and injunctive relief are moot because Plaintiff has been released from DOCCS custody. "In order for a federal court to retain jurisdiction over a case, an actual controversy must 'exist at all stages of review, not merely at the time the complaint is filed.'" *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)). "A case is moot when 'it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and]

interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Davis v. New York*, 316 F.3d 93, 99 (2d Cir. 2002) (citation omitted). "Where a prisoner has been *released* from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot." *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008). Plaintiff was released from DOCCS custody on November 13, 2015, after serving his maximum sentence. *See* DOCCS Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.ny.gov (Inmate David Ryan, DIN 10-A-0490) (last visited July 5, 2016). Plaintiff's claims for declaratory and injunctive relief are therefore moot and should be dismissed. *See Muhummad v. City of New York Dep't of Corrs.*, 126 F.3d 119, 123 (2d Cir. 1997).

Plaintiff's claims therefore survive only to the extent he seeks monetary damages. However, Plaintiff cannot bring a claim for monetary damages under RLUIPA. The Supreme Court has held that "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citing *Sossaman v. Texas*, 131 S. Ct. 1651, 1663 (2011)). Accordingly, the Court recommends that Plaintiff's RLUIPA claim be **dismissed**.

### B. Plaintiff's Free Exercise Claim

Plaintiff asserts a claim for violations of his religious rights under the Free Exercise Clause. The Free Exercise Clause applies to prison inmates, subject to appropriate limiting factors. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). A prisoner's free exercise rights are balanced against the "interests of prison officials charged with complex duties arising from administration of

the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). A prisoner's free exercise claim is therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Ford v. McGinnis*, 352 F.3d at 588. Thus, a prison regulation that impinges upon an inmate's constitutional rights may be valid, despite such encroachment, if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Farid v. Smith*, 850 F.2d at 925. The application of a lower reasonableness standard is consistent with the notion that "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone v. Estate of Shabazz*, 482 U.S. at 349 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

The Second Circuit has directed courts faced with constitutional free exercise claims to assess, "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d at 926. The Supreme Court has enumerated four factors for determining the reasonableness of a restriction on a prisoner's constitutional rights:

> (1) there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it[;]
> (2) whether there are alternative means of exercising the right that remain open to prison inmates[;]
> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]
> (4) the absence of ready alternatives is evidence of the reasonableness of a

>prison regulation.
>
>*Turner v. Safley*, 482 U.S. at 89-91 (citation omitted).

"[O]nce prison officials put forward a legitimate penological interest to justify an infringement up a prisoner's religious free exercise, the burden remains with the prisoner to 'show that these [penological] concerns were irrational.'" *Ford v. McGinnis*, 352 F.3d at 595 (quoting *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989)).

It is unclear whether a prisoner asserting a free exercise claim must establish, as a threshold requirement, that the disputed conduct substantially burdened his sincerely held religious beliefs. The Second Circuit has several times assumed, without deciding, that the test applies to free exercise claims. *Holland v. Goord*, 758 F.3d at 220-21; *Salahuddin v. Goord*, 467 F.3d at 275 n.5; *Ford v. McGinnis*, 352 F.3d at 592. Accordingly, the Court will assume that Plaintiff must show a substantial burden for the purposes of his free exercise claim. A state policy or action imposes a substantial burden where it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quoting *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). The Second Circuit has also looked at whether the infringed upon religious activity is "central or important" to the prisoner's religious beliefs. *Ford v. McGinnis*, 352 F.3d at 594.

The restriction at issue in this action limits the number of books Plaintiff may possess while in SHU to eleven books, all of which could be religious books. It is undisputed that at all relevant times for this action, Plaintiff was allowed to have eleven books, including the Quran. Pl.'s Dep. at pp. 101 & 108. Furthermore, Defendants Graham and Morris did not deny Plaintiff access to any religious book, but merely referred him to Directive No. 4933. Thus, the Court must determine (1) whether Directive No. 4933 substantially burdens Plaintiff's sincerely held religious beliefs and (2)

whether it is nonetheless justified by legitimate penological interests.

Defendants argue that the policy does not substantially burden Plaintiff's religious beliefs because Plaintiff merely sought his books for educational, not religious, purposes. Defs.' Mem. of Law at p. 9. To the extent this is an argument that Plaintiff's desire to have his books in his cell is not in order to practice his religion, the Court disagrees. "An individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are 'sincerely held' and in the individual's 'own scheme of things, religious.'" *Ford v. McGinnis*, 352 F.3d at 588 (quoting *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002)). Defendants point to Plaintiff's statements in complaint letters to Defendants that he was seeking to obtain a theology certificate and needed his educational books. Morris Decl., Ex. C. However, Plaintiff also stated that his studies were essential to practice of his religion. *See* Pl.'s Dep. at pp. 110-11 (stating that he was conducting a comparative study of Islam and other religions because "[t]his is what we're instructed to do because how are we going to know what the truth . . . is if we don't study the other books that came before it?"). Furthermore, Plaintiff stated that he used his books to teach him how to say his prayers and how to comport himself in his daily activities consistent with his religion. *See* Pl.'s Dep. at pp. 26-27 & 64. Plaintiff has therefore stated that access to his books is religious in his scheme of beliefs and that such belief is sincerely held.

However, the Court agrees that Plaintiff has not met his burden of demonstrating that Directive No. 4933 substantially burdens his exercise of his religion. Although Plaintiff has established that he needs access to his books in order to practice his religion, Plaintiff has not established that he requires *unfettered* access to his books in his SHU cell. Plaintiff has made no specific showing that the eleven-book limit imposed by Directive No. 4933 "put[] substantial

pressure on [Plaintiff] to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d at 477. Plaintiff was allowed to possess up to eleven religious books in his cell, which he could exchange once a month. Plaintiff also had access to the facility's library, which had religious books, and could consult with the facility's Imam. Morris Decl. at ¶¶ 28 & 29. Plaintiff has not shown, as he claims, that he required immediate access to all of his books.[4]

Even if Plaintiff had shown that Directive No. 4933 substantially burdened his practice of religion, Defendants have established that the regulation is reasonably related to legitimate penological purposes. Applying the *Turner* factors, Defendants have shown that the regulation is related to prisoner safety and security, which are legitimate penological purposes. *See Giano v. Senkowski*, 54 F.3d 1050, 1054 (2d Cir. 1995). Defendants assert that the limitation on the number of books an inmate may possess serves multiple safety and security interests. Graham Decl. at ¶ 19. Specifically, papers in an inmate's cell are a fire hazard and an inmate may start a fire to prompt an evacuation or cause a distraction. *Id.* at ¶ 20. Evacuating inmates from SHU in the event of a fire is difficult, because they cannot all be let out of their cells at once. *Id.* Furthermore, inmates may use books to conceal contraband. *Id.* at ¶ 21. Allowing inmates to possess an unlimited number of books frustrates the ability of corrections officers to conduct inspections of cells. *Id.* at ¶ 23. Inmates have also been known to use books to cover up their cell doors and conceal themselves from staff. *Id.* at ¶ 22. *Turner* only requires a "valid, rational connection" between the regulation and a

---

[4] The Court contrasts Plaintiff's claims with *Washington v. Klem*, 497 F.3d 272 (3rd Cir. 2007), where the Third Circuit found that a regulation limiting the number of books a prisoner could have in his cell to ten substantially burdened the plaintiff's exercise of his religion. 497 F.3d at 281. In *Washington*, the plaintiff showed that his religion required him to read four new religious books per day, *id.* at 275, and the court found that the ten-book limitation "severely inhibit[ed]" this religious practice. *Id.* at 282. In this case, by contrast, Plaintiff has not made a specific showing that his religion requires him to have access to a certain number of books per day or that the access he was allowed "severely inhibited" his exercise of his religion.

*-13-*

legitimate government interest, 482 U.S. at 89-90, and Defendants' asserted justifications for Directive No. 4933 are adequate.

Second, as to alternative means for Plaintiff to exercise his religious rights, as stated above, Plaintiff could exchange his books once a month and had access to the facility's library. These are reasonable alternatives for Plaintiff to access his books, without having all of his books in his SHU cell at the same time. As to the third factor, Defendants have established that accommodation of Plaintiff would have an adverse impact on prison staff, by creating security risks with regard to cell inspections. Finally, while there are perhaps alternatives to the eleven-book limitation, the regulation need not be the "least restrictive alternative." *Turner v. Safley*, 482 U.S. at 90-91. Considering the *Turner* factors, the Court finds that Defendants have established that the eleven-book limitation is reasonably related to legitimate penological interests. The burden therefore shifts to Plaintiff to establish that Defendants' penological concerns are irrational, *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989), and Plaintiff simply has not met that burden.

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be **granted**.[5]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 32) be **GRANTED** and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

---

[5] Because the Court finds that summary judgment on Plaintiff's free exercise claim is appropriate, it does not address Defendants' qualified immunity or exhaustion arguments.

*-14-*

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: July 5, 2016
Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge